UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.A. SALES COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARY SEO, et al., <br><br> Defendants. | Case No.19-cv-00832-JSC <br><br> **ORDER RE: MOTIONS TO DISMISS** <br> Re: Dkt. Nos. 42, 46, 53 |

Plaintiff N.A. Sales Company, Inc., a wholesaler of frozen fish meat and other related supplies, filed this civil action in 2013 in San Mateo County Superior Court. Following several rounds of motion practice, Plaintiff added additional defendants and a federal civil RICO[1] claim, and the recently added defendants removed the action to this Court based on federal question jurisdiction. Defendants JHK Pacific Common, Clayton Swartz, Haeng Cha Swartz, and JYK Investment Consulting Corporation have all moved to dismiss Plaintiff's Fifth Amended Complaint ("FAC").[2] (Dkt. Nos. 42, 46 & 53.) Having considered the parties' briefs and having had the benefit of oral argument on August 22, 2019, the Court GRANTS IN PART and DENIES in PART the motions to dismiss. Plaintiff's RICO, RICO conspiracy, and successor-in-interest claims fail to state a claim on which relief can be granted. Defendants JHK Pacific Common, Clayton Swartz, and Haeng Cha Swartz's motion to dismiss the fraudulent transfer and fraudulent transfer conspiracy claim is denied as the state court already denied Defendants' demurrer on

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 39.) The non-appearing defaulted Defendant, Bishop Ranch Gateway, has been severed and Plaintiff's claims against it are proceeding in *N.A. Sales Company, Inc., v. Bishop Ranch Gateway*, No. 19-05226 JSC.

those claims and Defendants have not moved for reconsideration. Defendant JYK Investment Consulting Corporation's motion to dismiss the fraudulent transfer and fraudulent transfer conspiracy claim is granted for failure to state a claim.

## BACKGROUND

### A. FAC Allegations

Plaintiff N.A. Sales Company, Inc. is a wholesale distributor of Japanese restaurant supplies, including frozen fish meat and related supplies. (FAC ¶ 1.) Plaintiff sells to about 600 restaurants in the greater Bay Area. (*Id*.) Plaintiff often does so through unsecured credit accounts for which it "requires and receives in writing from the restaurants the promises to pay timely finance charges and collection costs as well as personal guarantees." (*Id*. at ¶ 2.)

In 2008 and 2010, Plaintiff entered into written agreements with several restaurants collectively known as the Madfish Restaurant Companies to provide supplies on credit. (*Id*. at ¶ 31.) Under these agreements, the Madfish Restaurant Companies agreed to pay 1.5% per month in interest for past due invoices and pay "reasonable attorney(s) fees, collection fees, court costs and other expenses incurred by N.A. Sales." (*Id*. at ¶ 32.) In August 2010, Hae-Suk Lee issued Plaintiff a check whereby he agreed to pay $200,000 in the event Madfish Restaurant Companies failed to pay the then-outstanding open book balance of approximately $216,000. (*Id*. at ¶¶ 35, 50.) That same month, Moon Joo Lee, Hae-Suk Lee's son, also "promise[d] that he would be personally responsible for the debts." (*Id*. at ¶¶ 30, 50.) Plaintiff relied on this promise and delayed collection actions against the Madfish Restaurant Companies. (*Id*. at ¶ 36.) However, the Madfish Restaurant Companies did not pay and instead "sold or closed businesses, and filed for bankruptcy." (*Id*. at ¶ 38.) As of July 31, 2013, the balance due on the supply credit agreement was $171,217 (without interest). (*Id*. at ¶ 57.)

While these outstanding balances were owed, the Lees (Hae-Suk, his wife Soon Bok Park, and son Moon Joo Lee (collectively referred to as "the Lees")) caused the Madfish Restaurant Companies "to make regular, continuous and substantial distributions to [Soon Bok] Park, Hyeong Geon Lee and Seraphina Jang." (*Id*. at ¶ 60.) Using these transferred funds, Defendants "acted in concert" to purchase a house "effectively controlled" by Hae-Suk Lee and Soon Bok Park where

2

Moon Joo Lee eventually resided. (*Id*. at ¶ 61.) In addition, the Lees "used accounts set up in the name of June Kim, the bookkeeper, to transfer funds from the Madfish Restaurant Companies, rather than using the funds to pay off the trade payables then-owed to Plaintiff NAS." (*Id*. at ¶ 62.) The Lees thereafter "used the transferred funds of the Madfish Restaurant Companies for their expenses and also periodically withdrew from the accounts." (*Id*. at ¶ 65.) The Lees did so under false pretenses writing checks with forged signatures from June Kim and using her debit card under false pretenses. (*Id*. at ¶ 114.)

In September 2014, Junho Kim (who previously worked as a waiter for the Lees) incorporated JHK Pacific Common and the Lees "*transferred* the Little Madfish business, right to use his federally registered trademark 'Little Madfish', an Internet domain name (i.e., www.littlemadfish.com), certain business system and the right to conduct Japanese restaurant business at 43337 Christy Street, Fremont, California" "without receiving anything from JHK Pacific Common of Jun Ho Kim; that is, he made the Transfer *for free*." (*Id*. at ¶ 72 (emphasis in original).) Alternatively, in October 2014, the Lees transferred these same "interest or/and the right to use the above-mentioned properties to Defendants Swartzs ('Alternative Transfer') without receiving anything from the Swartzs." (*Id*. at ¶ 73.) Plaintiff is "informed and believes and thereon alleges that the Transfers were made, or obligation was incurred with an intent to hinder, delay, or defraud" creditors including Plaintiff in the collection of claims. (*Id*. at ¶ 75.)

However, it is elsewhere alleged that Junho Kim entered into a business sale and purchase agreement with the Swartzs in October 2014 to "sell the business by way of stock sale" such that the Swartzs were to acquire the entire issued and outstanding shares of Defendant JHK Pacific Common from Defendant JH Kim for "$600,000, a bit more than half, i.e., $307,989.22 of which was paid in escrow check at the closing and the other roughly half by owner-carry, i.e., a promissory note issued by Swartz secured by a deed of trust." (*Id*. at ¶ 78.) Shortly after this agreement was closed, Junho Kim transferred the cash portion of the purchase price to Moon Joo Lee. (*Id*. at ¶ 79.)

"From or about September 1, 2014 to November 23, 2014, Defendants Lees, JH Kim, JHK Pacific Common, Swartz, Mary Seo and JYK agreed and knowingly and willfully conspired

3

among themselves to hinder, delay, and defraud Plaintiff NAS in the collection of the personal guarantees and other liabilities that the Lees owed to Plaintiff NAS." (*Id*. at ¶ 82.)

By October 27, 2014, the Swartzs, JYK Investment Consulting Corp. (a real estate agency), and Mary Seo (a real estate salesperson with Titan Real Estate Services, Inc.) "knew that JHK Pacific Common did not have an ABC license and that [Moon Joo] Lee owned (through his wholly owned entities) the ABC license and let JHK Pacific Common use it." (*Id*. at ¶ 84.) "Defendants stipulated that the transfer of the ABC license was the condition for Defendants Swartzs to purchase the business Little Madfish at the location." (*Id*.) A few weeks later, the Swartzs, JYK Investment Consulting, and Mary Seo discovered that Junho Kim "the purported owner of JHK Pacific Common…was only a waiter, an employee, of Defendant MJ Lee at the business." (*Id*. at ¶ 85.)

Defendants nonetheless "agreed to structure the transfer of [Moon Joo] Lee's Little Madfish business that utilizes the ABC license into a two-part transfer. The first part was (after the Lees have already transferred the business opportunity to JHK Pacific Common) for the waiter J[un Ho] Kim to transfer the stock in JHK Pacific Common to Swartzs, and the second part was for M[oon Joo] Lee to cause his wholly owned entity, the bankruptcy corporation, to transfer the ABC license to JHK Pacific Common." (*Id*. at ¶ 86.) JYK Investment Consulting and the Swartzs agreed to the stock purchase "as a means to purchase the business opportunity of 'Little Mad Fish.'" (*Id*. at ¶ 89.) Moon Joo "Lee and Defendant Swartz negotiated and agreed that the value of the ABC license was $500 and exchanged the amount; however, upon information and belief, the true market value is over $20,000." (*Id*. at ¶ 96.) This was all done to avoid creditors such as Plaintiff. (*Id*. at ¶¶ 92-96.)

**B. Procedural Background**

In December 2013, Plaintiff filed this action in the Superior Court of San Mateo County.[3]

---

[3] This action was pending in state court for six years prior to its removal to this Court. The Court takes judicial notice of filings in the state court action. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts.") (internal citation omitted). While Defendants' notice of removal attached some of these documents and others were attached to the parties' briefing on the pending motions, not all of the documents have been submitted in

4

The original complaint pled two claims for relief against Hae-Suk Lee, Moon Joo Lee, and Soon Bok Park (collectively "the Lees" or "Lee Defendants"): (1) promissory estoppel and (2) alter ego. (Dkt. No. 1 a ¶ 1.) Plaintiff then filed a first amended complaint adding claims and defendants. (*See N.A. Sales Company Inc. v. Hae-Suk Lee, et al.*, CIV525758 (San Mateo Supr. Crt. Feb. 20, 2014 filing).) Over the next several years, there was considerable motion practice including an appeal of the denial of the motions to vacate and set aside defaults of Hae-Suk Lee, Soon Bok Park, Moon Joo Lee, Junho Kim and Seraphina Jang. (Dkt. Nos. 56-3; 56-9.) The appellate court reversed the denial of these defendants' motions to vacate and set aside default. *See N.A. Sales Co., Inc. v. Hae-Suk Lee*, No. A145359, 2018 WL 1444523 (Cal. Ct. App. Mar. 23, 2018). Plaintiff thereafter filed a second amended complaint on June 27, 2018 which added claims including a civil RICO claim against Hae-Suk Lee, Soon-Bok Park, Moon Joo Lee, Junho Kim, and JHK Pacific Common, Inc. (*See N.A. Sales Company Inc. v. Hae-Suk Lee, et al.*, CIV525758 (San Mateo Supr. Crt. June 27, 2018 filing).) Two months later, Plaintiff filed yet another amended complaint which again added claims and defendants including Clayton and Haeng Cha Swartz. (Dkt. No. 56-4 (Third Amended Complaint).) On December 20, 2018, the superior court denied the Swartzs and JHK Pacific Common's demurrer to the third amended complaint stating that their "demurrer to the Eighth and Ninth Causes of Action set forth in Plaintiff's Third Amended Complaint is OVERRULED." (Dkt. No 56-7 at 2.)

On January 9, 2019, Plaintiff filed a fourth amended complaint which again added claims and parties, including a civil RICO conspiracy claim. (Dkt. No. 1 at 9.) Defendants Davis Berk Realty, Mary Seo and Mohammad Siddique removed the action to this Court based on federal question jurisdiction in light of the federal civil RICO claims. (*Id*. at ¶ 18.) The action was originally assigned to District Judge Donato; however, at the parties' Case Management Conference, the appearing parties consented to the reassignment of the action to a magistrate judge. (Dkt. No. 33, 36, 43.)

Plaintiff thereafter filed the now operative Fifth Amended Complaint which pleads the

---

this action. Thus, where appropriate, the Court cites to the state court docket. *See N.A. Sales Company Inc. v. Hae-Suk Lee, et al.*, CIV525758 (San Mateo Supr. Crt. filed Dec. 11, 2013).

following claims: (1) promissory estoppel (as to Hae-Suk Lee); (2) breach of personal guarantees (as to Hae-Suk Lee and Moon Joo Park); (3) fraud – promise made without the intent to perform (as to Hae-Suk Lee and Moon Joo Park); (4) alter ego (as to Hae-Suk Lee, Moon Joo Park, and Soon Bok Park); (5) conspiracy to fraudulent transfer (as to Hae-Suk Lee, Moon Joo Park, Soon Bok Park, Junho Kim, JHK Pacific Common, Clayton and Haeng Cha Swartz, Mary Seo, Mohammad Siddique, Davis Berk Realty Inc., JYK Investment Consulting Corp., and Yi Soo John Kim); (6) fraudulent transfer (as to Hae-Suk Lee, Moon Joo Park, Soon Bok Park, Junho Kim, JHK Pacific Common, Clayton and Haeng Cha Swartz, Mary Seo, Mohammad Siddique, Davis Berk Realty Inc., JYK Investment Consulting Corp., and Yi Soo John Kim); (7) civil RICO (as to Hae-Suk Lee, Moon Joo Park, Soon Bok Park, and June Kim); (8) conspiracy to civil RICO (as to Clayton and Haeng Cha Swartz, JHK Pacific Common, JYK Investment Consulting Corp.,); (9) vicarious liability (as to Mohammad Siddique and Davis Berk Realty Inc.) and (10) successor-in-interest liability (as to JHK Pacific Common). (Dkt. No. 38.)

Defendants Mary Seo, Davis Berk Realty Inc, Mohammad Siddique, the Lees, Junho Kim, and June Kim all answered the FAC. (Dkt. Nos. 44, 45.) Defendants JHK Pacific Common ("JHK Pacific"), Clayton and Haeng Cha Swartz (collectively "the Swartzs"), and JYK Investment Consulting Corporation ("JYK Investment") have moved to dismiss and join in the others' motions.[4] (Dkt. Nos. 42, 46, 53, 54.)

**DISCUSSION**

Four of the defendants—the Swartzs, JHK Pacific, and JYK Investment—have moved to dismiss the claims pled against them; namely, the fraudulent conveyance claim, the fraudulent conveyance conspiracy claim, the civil RICO conspiracy claim, and the successor-in-interest claim as to JHK Pacific. These defendants insist that these claims fail to state a claim upon which relief could be granted and that the statute of limitations has run on the first three claims. Although JHK

---

[4] Defendant Yi Soo John Kim, the president and owner of Defendant JYK Investment Consulting Corporation, filed a voluntary Chapter 7 bankruptcy proceeding on March 15, 2019 and as such proceedings as to him are stayed under 11 U.S.C. § 362. *In re: Yi Soo John Kim*, No. 19-40620 (N.D. Cal. Bankr.).

6

Pacific and the Swartzs filed a motion separate from that of JYK Investment, the arguments overlap substantially so the Court addresses the adequacy of claims as pled to all parties jointly and hereafter refers to these defendants collectively as "Moving Defendants."

## A. Civil RICO Claims

The civil RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must allege facts showing: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted). To state a civil RICO conspiracy claim under § 1962(d), "Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses.*" Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Id.*; *see also Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (same).

RICO claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) ("Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims."). In the context of RICO, Rule 9(b) requires that a plaintiff "detail[s] with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011) (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)). "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.* 785 F. Supp. 2d at 919.

7

Here, Plaintiff pleads a civil RICO claim against the Lees and June Kim (their bookkeeper), and a civil RICO conspiracy claim against the Swartzs, JHK Pacific, and JYK Investment. Moving Defendants seek dismissal of the RICO conspiracy claim. Plaintiff urges the Court to reject the motion as an improper attempt to seek reconsideration of the state court's denial of the Lee Defendants' demurrer to the third amended complaint. (Dkt. No. 56-9.) The problem with Plaintiff's argument is that the demurrer was brought by the Lee Defendants—not the Swartzs, JHK Pacific, or JYK Investment. No court has analyzed the sufficiency of the civil RICO allegations against the Moving Defendants.

The Court thus turns to merits of the Moving Defendants' arguments and considers first whether Plaintiff has adequately pled a RICO claim and then turns to the plausibility of the RICO conspiracy claim.

### 1. The RICO Claim

As noted above, the RICO statute, 18 U.S.C. § 1962(c), requires a plaintiff to prove that each defendant participated in: (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity which (5) proximately harmed the victim. *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Defendants insist that Plaintiff has failed to allege an enterprise, a pattern of racketeering, or proximate harm.

#### a) Enterprise

The RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007) (quoting 18 U.S.C. § 1961(4)). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom*, 486 F.3d at 552 (quoting *Turkette*, 452 U.S. at 583). In addition, "plaintiffs must plead that the enterprise has (A) a common purpose, (B) a

8

structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Properties,* 751 F.3d at 997.

Plaintiff alleges an associated-in-fact enterprise between the Lees and their bookkeeper June Kim. According to the FAC, the enterprise consisted of "two components." (FAC at ¶ 103.) First, the Lees transferred their funds and those of the Madfish Restaurant Companies into bank accounts which they had opened in the name of their bookkeeper, June Kim, for no consideration, and second, they used the funds in June Kim's account to transact personal business under false pretenses and by fraud. (*Id.* at ¶¶ 103-104.) The alleged purpose of the enterprise was to allow the Lees "to keep their funds and the funds of Madfish Restaurant Companies away from the reaches of creditors, while themselves having the full access to obtain the so-concealed funds for their own use at any time of their choosing." (*Id.* at ¶ 105.) The alleged enterprise began in 2008 and continued through 2013 with numerous specific transactions outlined in the complaint. (*Id.* at ¶¶ 107-112.) Given these allegations, Plaintiff has adequately alleged an associated-in-fact enterprise between the Lees and June Kim.

### b) Pattern of Racketeering Activity

Under RICO, racketeering activity is defined as the commission of a predicate act that is one of an enumerated list of federal crimes. *See* 18 U.S.C. § 1961(1)(B). To establish a "pattern" under RICO, courts consider the relatedness of the predicate acts and continuity. *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363, n.2 (9th Cir. 1987). Predicate acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

Here, the only predicate act identified by Plaintiff is bank fraud under 18 U.S.C. § 1344. (FAC at ¶ 114.) Bank fraud under 18 U.S.C. § 1344 comes in two forms. *Compare* 18 U.S.C. § 1344(1) *with* 18 U.S.C. § 1344(2); *see Shaw v. United States,* 137 S. Ct. 462, 468 (2016) (noting that the "two subsections overlap substantially but not completely.") Plaintiff's claim here falls under § 1344(2). The Lees are alleged to have written checks with Ms. Kim's forged signature and to have used her debit card under false pretenses. (FAC at ¶ 114.) While the complaint

9

alleges that the forged checks and debit card use was done "with the cooperation and full support of Defendant June Kim" (*id.* at ¶ 105), drawing all inferences in Plaintiff's favor as the Court must at this stage, the allegation that the Lees forged her signature and used her debit card under false pretenses over a five year period is sufficient to plead a pattern of racketeering activity. *See Loughrin v. United States*, 573 U.S. 351, 363 (2014) ("Section 1344(2)'s 'by means of' language is satisfied when, as here, the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control. That occurs, most clearly, when a defendant makes a misrepresentation to the bank itself—say, when he attempts to cash, at the teller's window, a forged or altered check.").

### c) Proximate Harm

The civil RICO statute requires plaintiffs "to show that a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (internal citation omitted). The "central question" in the RICO proximate cause analysis is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). The link cannot be "too remote," "purely contingent," or "indirect." *Hemi Grp.,* 559 U.S. at 9. Moving Defendants insist that even if Plaintiff has adequately pled a pattern of racketeering activity, it has not alleged that any of the defendants' conduct proximately caused Plaintiff's injury. The Court agrees—Plaintiff has failed to draw the line between Defendants' allegedly fraudulent activities and Plaintiff's inability to collect on the amount owed to it; that is, Plaintiff has not alleged that but for Defendants' fraudulent actions of transferring their funds and those of the Madfish Restaurant Group into the account held by June Kim, Plaintiff would have been able to collect on the funds due to it. Plaintiff has not alleged that Defendants transferred all their assets and those of the Madfish Restaurant Group into June Kim's account or that Defendants were insolvent such that they were otherwise unable to collect on the amount owed to them.[5] "When a court evaluates a RICO claim

---

[5] While Plaintiff has alleged that Defendant Moon Joo Lee declared bankruptcy, Plaintiff has not made similar allegations with respect to Hae-Suk Lee who also provided a personal guarantee for the amount owed.

10

for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. The allegations of injury here are too "attenuated." *Hemi Grp.*, 559 U.S. at 10. While Plaintiff may be able to make such an allegation, it has not yet done so.

\*\*\*

Accordingly, the Court concludes that Plaintiff has failed to adequately allege the underlying RICO claim based on the failure to sufficiently allege that Defendants' fraudulent conduct proximately harmed it.

### 2. The RICO Conspiracy Claim

To establish a RICO conspiracy, Plaintiffs must allege either (1) "an agreement that is a substantive violation of RICO," or (2) "that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard*, 208 F.3d at 751 (citing 18 U.S.C. § 1962(d)). Further, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

Plaintiff has not alleged facts that plausibly support an inference that the Swartzs and JYK Investment (the "Swartz Defendants") adopted the goal of furthering the Lees' scheme to hide their assets from their creditors. Plaintiff alleges that the Swartzs entered into an agreement with Junho Kim to purchase Little Madfish from JHK Pacific Common for $600,000 on October 25, 2014. (Dkt. No. 38 ¶ 130.) Then on or around November 22, 2014, the Swartzs through their broker sent "buyer's questions," and specifically expressed concern about the previous bankruptcy filed by ISIF Madfish which had operated a restaurant at the same location as Little Madfish. (*Id.* at ¶¶ 131-132.) In particular, they wanted to know if the bankruptcy was due to management issues with the business or contractual issues with the landlord. (*Id.* at ¶ 132.) And, allegedly, Moon Joo Lee responded that that the purpose of the previous bankruptcy was to dissolve the company and leave no personal liability. (*Id.* at ¶ 134.) In addition, Plaintiff alleges that the Swartzs knew that the ABC license for Little Madfish was held by the bankrupt company ISIF Madfish and that the Swartz Defendants requested that the escrow officer transfer the license to

11

Junho Kim to be transferred to the Swartzs and that the seller would pay the expenses for the transfer. In response, the seller's broker negotiated a different deal: the ABC license would be transferred directly to the Swartzs, the buyer would pay the fees, and the value of the license was set at $500. (*Id*. at ¶ 136.)

These allegations plausibly support an inference that the Swartz Defendants learned that Moon Joo Lee was the actual seller, not Junho Kim, but they do not plausibly support an inference that the Swartzs were "aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard*, 208 F.3d at 751 (internal citation and quotation marks omitted). No allegations support an inference that the Swartzs Defendants were aware that the sale was structured as it was to assist the Lees with hiding assets from creditors. To the contrary, Plaintiff alleges that in November the Swartz Defendants were inquiring into the ISIF Madfish bankruptcy as part of their due diligence for the sale; such an allegation is not consistent with the Swartz Defendants knowingly participating in a RICO conspiracy. That the Swartz Defendants learned that the Lees had put ISIF Madfish into bankruptcy to avoid personal liability is of no moment. Bankruptcy is a court-supervised process designed to at times eliminate liability; knowledge of the prior bankruptcy does not support an inference that the Swartz Defendants understood that the sale of Little Madfish was structured to unlawfully avoid current creditors. Further, Plaintiff's oral argument assertion that the transfer of the license was somehow a fraud on the bankruptcy court is not plausible in light of the bankruptcy records submitted by the Moving Defendants and of which this Court takes judicial notice. (Dkt. No. 53-2.)

Finally, that the Swartz Defendants understood that Moon Joo Lee was the actual seller but nonetheless signed sale documents purchasing the business from Junho Kim does not plausibly support an inference that they were part of a RICO conspiracy. At oral argument, Plaintiff acknowledged that the crux of its conspiracy theory is that the Swartzs got a sweetheart deal; that is, that they paid less than value for Little Madfish and the ABC license. As to JYK Investment, Plaintiff contends it was paid for facilitating that real estate transaction. Plaintiff includes no allegations, however, that plausibly support an inference that the $600,000 for the stock ownership of the business plus $500 for the ABC license was so low as to support an inference that the

12

Swartz Defendants conspired with the Lees and others. Further, Plaintiff alleges that the Swartz Defendants agreed to purchase the business for $600,000 in October 2014—before they allegedly learned that Moon Joo Lee was the real seller and about the bankruptcy. This chronology as alleged by Plaintiff supports an inference that the sales price was an arms-length transaction rather than part of a RICO conspiracy. Plaintiff has thus failed to plausibly plead a RICO conspiracy claim as to the Swartzs and JYK Investment.

The same analysis does not apply to JHK Pacific. The complaint alleges that the Lees incorporated JHK Pacific in the name of their waiter, Junho Kim, and that Moon Joo Lee used JHK Pacific's bank account "to deposit other Little Madfish Restaurants' money" and also to pay other employees' wages and loans. (FAC at ¶¶ 72, 123.) Plaintiff alleges that "JHK accepted the money on its bank account fully aware of the nature and scope of the RICO Scheme, and benefitted from participating and facilitating the scheme because, among others, it received the money without giving anything in return, and because JH Kim (JHK's then sole owner) was MJ Lee's strawman in incorporating JHK." (*Id*. at ¶ 124.) Given these allegations, the Court concludes that the conspiracy aspect of the RICO conspiracy claim is adequately pled as to JHK Pacific. The claim is nonetheless subject to dismissal: while a civil RICO conspiracy claim can survive even if the substantive RICO claim does not, where the plaintiff has failed to allege the requisite substantive elements of RICO claim, the RICO conspiracy claim cannot stand. *See Howard,* 208 F.3d at 751.

\*\*\*

Accordingly, the Moving Defendants' motion to dismiss the RICO conspiracy claim is granted. Plaintiff has failed to allege proximate causation between the alleged RICO scheme and Plaintiff's injuries and thus has not adequately pled the predicate RICO violation. Moreover, as to the conspiracy allegations, while Plaintiff's allegations as to JHK Pacific are sufficient to show intent to participate in the RICO claim, Plaintiff's allegations as to the Swartzs and JYK Investment are not. Plaintiff shall nonetheless be granted leave to amend the claim to the extent that it has a good faith basis for doing so and can state a plausible claim for relief.

//

### 3. The Statute of Limitations

Civil RICO has a four-year statute of limitations. *See Rotella v. Wood*, 528 U.S. 549, 557 (2000). The statute begins to run when a plaintiff knows or should know of the injury which is the basis for the action. *See Living Designs, Inc. v. E.I. Dupont de Nemours and Co*., 431 F.3d 353, 365 (9th Cir. 2005). The "injury discovery rule creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id*. at 1110 (internal quotation marks and citation omitted). The Moving Defendants contend that the face of the complaint establishes as a matter of law that Plaintiff's RICO conspiracy claim against them was filed too late.

In light of the dismissal of the RICO conspiracy claim for failure to state a claim, the Court declines to reach this issue. The Court notes, however, that Plaintiff alleges that it learned of the sale of Little Madfish to the Swartzs around March 15, 2015. (Dkt. No. 38 ¶ 139.) The Moving Defendants acknowledge this allegation, and then argue that because the statute even then must have run by March 2019 the claim is time barred, suggesting erroneously that the RICO conspiracy claim was added after March 2019. (Dkt. No. 46 at 21.) The claim was added, however, before the fourth amended complaint was removed in January 2019. (Dkt. No. 1.)

## B. Fraudulent Conveyance and Fraudulent Conveyance Conspiracy Claims

Next, Defendants move to dismiss Plaintiff's fraudulent conveyance and fraudulent conveyance conspiracy claims.[6] The Court will only address JYK Investment's motion to dismiss. JHK Pacific and the Swartzs previously filed a demurrer to the third amended complaint regarding these same claims and the state court denied the demurrer. (Dkt. No. 56-7.) Generally, when a case is removed from state court to federal court, as this case was, the federal court "takes the case up where the State left it off," and therefore gives the same effect to prior state court rulings that the state court would. *See Jenkins v. Commonwealth Land Title Ins. Co*., 95 F.3d 791, 795 (9th

---

[6] The claims are pled jointly as the fifth and sixth claims for relief.

Cir. 1996); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty*., 415 U.S. 423, 436 (1974) ("Congress clearly intended to preserve the effectiveness of state court orders after removal ..."). Because "[t]he federal court ... treats everything that occurred in the state court as if it had taken place in federal court," *see Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963), an "order entered by a state court 'should be treated as though it had been validly rendered in the federal proceeding.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (quoting *Butner*, 324 F.2d at 786); *see also Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1238 (9th Cir.1994) ("[I]mmediately after removal the district court would adopt the state court judgment as its own."). Courts in this Circuit thus routinely adopt state court rulings on state law issue issues when those issues were subsequently raised again after removal to federal court. *See Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 345 (N.D. Cal. 2014) (collecting cases re: same). JHK Pacific and the Swartzs' motion to dismiss essentially asks the Court to reconsider the state court's ruling denying the prior demurrer on these state law claims. However, JHK Pacific and the Swartzs have not shown that reconsideration is warranted and the Court declines to reconsider sua sponte. Their arguments, of course, may be raised on summary judgment.

Turning to JYK Investment's motion to dismiss the fraudulent conveyance and fraudulent conveyance conspiracy claims, the Court concludes that the motion must be granted. As a threshold matter, Plaintiff does not identify the legal basis for the claim which is itself a basis for dismissal. The Court assumes—as does JYK—that the claims are pled under California's Uniform Voidable Transactions Act, the UVTA, Cal. Civ. Code § 3439 et seq.[7] A fraudulent transfer under the UVTA "is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Kirkeby v. Superior Co*urt, 33 Cal.4th 642, 648 (2004) (internal citation and quotation marks omitted). Under the UVTA, a transfer can be invalid either because of actual or constructive fraud. *Potter*, 2019 WL

---

[7] The UVTA was formerly known as the Uniform Fraudulent Transfers Act (UFTA) until it was amended and renamed effective January 1, 2016. *See Potter v. All. United Ins. Co*., 37 Cal. App. 5th 894, 2019 WL 3296949, *2 n.2 (2019).

15

3296949 at *4. An actual fraud occurs where "a transfer is made, or an obligation is incurred, '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.'" *Id.* (quoting Cal. Civ. Code § 3439.04(a)(1)). While such a transfer is voidable as to a creditor of the debtor, "it is not voidable, however, 'against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee.'" *Potter*, 2019 WL 3296949 at *4 (quoting § 3439.08(a)).

Constructive fraud under the UVTA can be shown in either of two ways. *See Potter*, 2019 WL 3296949 at *4. First, where a debtor makes a transfer or incurs an obligation "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction[; or] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *See* § 3439.04(a)(2). Second, when a debtor makes a transfer or incurs an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *See* § 3439.05(a).

While Plaintiff's fraudulent conveyance allegations are difficult to untangle, it is apparent that there is no basis for Plaintiff's fraudulent conveyance claim against JYK Investment. JYK is neither the debtor or the transferee. At best, JYK was the real estate broker for the transfer, but Plaintiff has failed to show how that fact could possibly, let alone plausibly, subject JYK to liability under the UVTA. While Plaintiff baldly alleges that JYK Investment had knowledge of the fraudulent transfers, stating in conclusory terms that "Defendants JYK and Swartz knew such transaction to be risky as they knew JHK Pacific Common may have undisclosed liabilities," the FAC does not include allegations that plausibly support an inference that JYK had knowledge of the allegedly fraudulent transfers. (*Id.* at ¶¶ 76, 89.)

Nor has Plaintiff plausibly alleged a basis for a conspiracy to commit fraudulent transfer claim. "Civil conspiracy is not an independent tort. Instead, it is 'a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the

16

immediate tortfeasors a common plan or design in its perpetration.'" *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 211–12 (2011), as modified (Aug. 24, 2011) ; *see also Sanger v. Ahn*, No. 18-CV-07204-JCS, 2019 WL 1229660, at *7 (N.D. Cal. Mar. 15, 2019) (holding that a conspiracy claim exists under the UVTA). "The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Fillmore*, 198 Cal. App. 4th at 212; *see also Arch Ins. Co. v. Sierra Equip. Rental, Inc*., No. 2:12-CV-00617-KJM, 2015 WL 1814316, at *2 (E.D. Cal. Apr. 21, 2015) (applying these elements to a conspiracy to violate the UVTA claim). For the reasons explained in connection with the RICO conspiracy claim, Plaintiff has not alleged facts to plausibly support an inference of JYK Investment's knowing involvement in the fraudulent transfer scheme.

Accordingly, JYK's motion to dismiss the fraudulent conveyance and fraudulent conveyance conspiracy claims for failure to state a claim is granted.

\*\*\*

Given this conclusion, the Court need not reach the Moving Defendants' argument that the fraudulent conveyance and fraudulent conveyance conspiracy claims are also barred by the statute of limitations. The Court nonetheless briefly discusses the argument given that Plaintiff may elect to amend its fraudulent conveyance and fraudulent conveyance conspiracy claims against JYK.[8] Under the UVTA, actual fraud is "extinguished" unless filed "not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant." *Potter*, 2019 WL 3296949 at *4 (quoting § 3439.09(a)). The Moving Defendants contend that the first transfer occurred on February 20, 2014 such that Plaintiff was required to file the complaint by February 20, 2018[9]; however, Plaintiff did not add the claims against JYK until January 9, 2019. (Dkt. No. 1 at 9.) The Moving Defendants' argument is based on a request to take judicial notice

---

[8] While JYK did not move to dismiss on statue of limitations grounds, it joined in the Swartzs' and JHK Pacific's motion which did. (Dkt. No. 53.)

[9] This appears to be a typographical error as the underlying allegation uses the date January 20, 2014, not February 20, 2014. (Dkt. No. 62-4 at ¶ 52.)

17

of allegations from a complaint filed in another state court action Plaintiff filed against JHK Pacific. (Dkt. No. 62-4.) In that complaint, filed April 23, 2015, Plaintiff alleged that "on or about January 20, 2014, Defendant MJ LEE transferred its business to Defendant JHK, without ever receiving any consideration therefor at that time." (*Id*. at ¶ 52.) While the complaint from that action is judicially noticeable, the Moving Defendants have not cited any authority for the proposition that the Court must accept the factual allegations of that complaint over the factual allegations of the complaint filed in this action which allege that the transfer occurred in September 2014 (which would make the claim timely). (Dkt. No. 38 at ¶ 72.) Accordingly, the Moving Defendants have not proved their statute of limitations affirmative defense as a matter of law.

## C. Successor-in-Interest Claim

Finally, Defendant JHK Pacific moves to dismiss the tenth claim for relief which simply alleges that "JHK is a successor-in-interest to MJ Lee's business by reason of transfer of the Transferred Asset without MJ Lee's receiving anything in return as consideration. JHK Pacific Company is liable to NAS to the same extent and same degree as MJ Lee by reason of its status as the successor-in-interest, in addition to JHK Pacific Company's liabilities by other reasons and breaches stated above." (FAC at ¶ 144.)

This conclusory allegation is itself insufficient to state a claim for successor liability. However, Plaintiff elsewhere alleges that "Defendant JH incorporated Defendant JHK Pacific Common" and that "Defendant Lees [then] *transferred* the Little Madfish business… to Defendant JHK Pacific Common, directly or through Defendant JH Kim… without receiving anything from Defendant JHK Pacific Common or JH Kim." (FAC at ¶ 72 (emphasis in original).)

Generally, when a corporation purchases the principal assets of another corporation, "the purchaser does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Hernandez v. Enter. Rent-A-Car Co. of San Francisco*, 37 Cal. App. 5th 187, 192 (2019) (citing

18

1    *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977)).  Plaintiff insists that successor-liability exists here

2    under either the third or fourth basis; that is, that JHK Pacific is a mere continuation of Moon Joo

3    Lee's business or that—as has been discussed at length *supra*—the transfer was made to avoid the

4    Lee Defendants' debts to Plaintiff.  The problem with Plaintiff's claim is much the same as with

5    its other claims—an over-abundance of detail, but a lack of precision.  Plaintiff alleges successor

6    liability as to "MJ Lee" based on the transfer of the Little Madfish Restaurant, but elsewhere

7    alleges that the "Lee Defendants" own the Madfish Restaurant Group (and the Little Madfish).

8    (*Compare* FAC at ¶ 144 *with* ¶¶ 4-7.)

9    JHK Pacific's motion to dismiss the successor-in-interest claim is therefore granted with

10   leave to amend.

## CONCLUSION

12   For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the

13   motions to dismiss.  Plaintiff's RICO conspiracy and successor-in-interest claims fail to state a

14   claim on which relief can be granted and are dismissed.  Defendants JHK Pacific, Clayton Swartz,

15   Haeng Cha Swartz's motion to dismiss the fraudulent transfer and fraudulent transfer conspiracy

16   claim is denied as the state court already denied their demurrer to those claims and they have not

17   properly moved for reconsideration, let alone met the standard for reconsideration.  Defendant

18   JYK Investment's motion to dismiss the fraudulent transfer and fraudulent transfer conspiracy

19   claims is granted for failure to state a claim.

20   Plaintiff is granted leave to amend the dismissed claims as stated.  No other amendments

21   are allowed: no new defendants and no new claims.  Plaintiff's amended complaint shall be filed

22   by November 1, 2019. The amended complaint shall take care to allege each defendant's specific

23   conduct and to be precise as to what is alleged.  All other proceedings, including discovery, are

24   stayed pending the October 22, 2019 settlement conference with Magistrate Judge Kim.  However,

25   Magistrate Judge Kim, in her discretion, may allow particular discovery in advance of the

26   settlement conference.  The Court sets an initial case management conference for November 14,

27   2019 with an updated joint case management conference statement due November 7, 2019.

28   //

This Order disposes of Docket Nos. 42, 53, and 54.

**IT IS SO ORDERED.**

Dated: September 18, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge